Hedman v. Anderson.

Jonas Hedman, PLAINTIFF IN ERROR, v. Lafayette Anderson, DEFENDANT IN ERROR.

1. **Chattel Mortgage.** A mortgage of goods and chattels with possession and *power of sale in the mortgagor*, is void as against his creditors.

2. ———. In such case, the illegality of the transaction appears on the face of the instrument, and it is the duty of the court to pronounce it fraudulent as to creditors, it being presumed that the transaction was not entered into in good faith as *security* for the payment of a debt, but as a mode of covering up property, in order to hinder, delay, or defraud creditors.

3. ———: FRAUD. To render a conveyance which is not fraudulent on its face, void as to creditors, the fraudulent purpose must be shared by both the grantor and grantee. If the mortgagee has no notice of the fraudulent intent of the mortgagor, and the instrument was made to secure a *bona fide* debt, the mortgage will be valid.

4. ———: FRAUDULENT INTENT. The question of fraudulent intent, is generally determined from the existence of other facts which tend to establish it. The questions as to the existence of facts showing a fraudulent intent are alone for the jury to determine, and not for the court.

5. **Witnesses.** The question of the credibility of witnesses rests entirely with the jury.

6. **Fraud.** If certain facts tending to establish fraud *are conceded to exist*, the question of their sufficiency to establish a fraudulent intent is a question of law, to be decided by the court.

7. ———: CHATTEL MORTGAGE. The words: "It shall and may be lawful for him (the mortgagor) to retain the possession of the said goods and chattels, and to use and enjoy the same" until default, do not render the instrument void on its face.

8. ———: ———. When a mortgage is not void upon its face, the question of fraudulent intent must be submitted to the jury.

9. **Practice**: SETTING ASIDE VERDICT. The verdict of a jury will not be set aside unless it is clearly against the weight of evidence. A mere difference of opinion between the court and jury will not authorize the court to set aside a verdict. *Seymour v. Street*, 5 Neb., 89. *Blackburn v. Ostrander*, 5 Neb., 219, adhered to.

ERROR from the district court of Platte county. Tried below before POST, J. A statement of the case appears in the opinion.

*Millet & Son* (with whom was *J. M. Woolworth*) for plaintiff in error.

This mortgage had the marks of fraud because it was general, without exception of his apparel or anything of necessity, and the mortgagor was to continue in possession and use such articles as his own, and the transaction was inconsistent with the conveyance. 1 Smith's Leading Cases, 2d Ed., pages 34, and from 40 to 51 inclusive.

A sale of chattels, absolute or contingent, with an agreement in or out of the deed that the vendor may keep possession, or, if the vendor keep possession without any agreement, except in *special* cases, and for *special* reasons to be shown and approved by the court, is fraudulent and void as against creditors. *Jennings v. Carter and Wilcox*, 2 Wend., 446. *Divver v. McLaughlin*, Id., 596. *Sturtevant v. Ballard*, 9 Johns., 343. 1 Esp., 305. 1 Campb., 332.

The mortgage, by its very terms, contemplates the sale of the property by the mortgagor; the stipulation that until default be made by the mortgagor that he is to retain the possession of the goods and chattels named in said mortgage and to use and enjoy the same is equivalent to the power of disposition of them; and if there is any doubt in thus construing it, the parties themselves, by their acts, put that construction upon it. Platt sold the property mortgaged. Anderson saw the sales being made, and made no objections. Platt could have sold all of the property contained in the mortgage and have conveyed a good title thereto, and thus revoke the mortgage.

All the cases concur in the position, that if the power of disposition appear upon the face of the mortgage, or is fairly inferred from its provisions, it is the duty of the court to so declare it without submitting the matter to the jury as a question of fact, and such understanding may be shown by parol evidence or by the conduct of the parties in relation to the subject matter of the mortgage and other circumstances as in other cases, and that in either case, where the fact is made to appear, the mortgage is fraudulent in law, *irrespective* of the intention of the parties. *Freeman v. Rawson*, 5 Ohio State, 12. *Collins v. Myers*, 16 Ohio, 547. *Steinart v. Deuster*, 23 Wis., 136. *Coburn v. Pickering*, 3 New Hamp., 415. 17 Id., 298. 42 Id., 510. *Ulen v. Woods*, 5 Sergt. & Rawle, 275. *McKibbin v. Martin*, 64 Penn. State, 352. *Harmon v. Abbey*, 7 Ohio State, 218. *Chophard v. Bayard*, 4 Minn., 533. *Horton v. Williams*, 21 Minn., 187. *Bishop v. Warner*, 19 Conn., 460. *Lodge v. Samuels*, 50 Mo., 204. *Robinson v. Elliot*, 22 Wall., 513.

*E. Wakeley* and *Gerrard and Whitmoyer* for defendant in error.

The cases cited to show that possession is indispensable were nearly all decided under the common law, or in states where registration was not provided for.   One or two in New York decided under a statute similar to ours, and, seeming to hold that recording did not do away with the necessity of possession, have been overruled; and it is now the settled doctrine that continued possession by the mortgagor is only *prima facie* evidence of fraud.   To hold that there must be both change of possession and recording would make our statute utterly absurd.   It would make it say substantially that a mortgage not followed by change of possession shall be absolutely void *unless* recorded, and be absolutely void *if* recorded.   If it means that, why did it not say that the mortgage shall be void unless followed by change of possession *and* recorded?   This consideration disposes of very many cases on our opponent's brief.   *Pyle v. Warren*, 2 Neb., 241.   *Smith v. Acker*, 23 Wend., 653.   *Butler v. Van Wyck*, 1 Hill, 428. *Collins v. Myers*, 17 Ohio, 547.   *Ford v. Williams*, 24 N. Y., 359.   *Miller v. Lockwood*, 32 N. Y., 293. *Hughes v. Cory*, 20 Iowa, 399.   *Feurt v. Rowell*, 62 Mo., 524.

The authorities are in conflict as to whether an agreement in the mortgage, or outside of it, permitting the mortgagor to sell and dispose of the mortgaged property, renders it necessarily void as to creditors.   Opposed to it are many cases in courts of the highest authority. Among them are: *Jones v. Huggeford*, 3 Met., 515. *Codman v. Freeman*, 3 Cush., 306.   *Gay v. Bidwell*, 1 Mich., 519.   *Hughes v. Cory*, 20 Iowa, 399.   *Barnett v. Timberlake*, 57 Mo., 499.   *Kleine v. Katzenkerger*, 20 Ohio St., 110.

The substance of the alleged error in the rulings of the district court is this: That the mere fact that the mortgagor disposed of some part of the property for his

own use, with the knowledge and without the dissent of
the mortgagor, did not of itself render the mortgage
void as to the plaintiff, provided there was no agreement
in or out of the mortgage that the property might be
so disposed of. This was not error. The cases do not say
so; and the proposition that such an acquiescence by
the mortgagor necessarily renders his mortgage void,
that it nullifies and makes worthless a security valid and
unassailable down to the moment of such permission, is
untenable upon grounds of reason. To what results
would that doctrine lead? A mortgage is given for
money loaned. There is no intent to defraud. It con-
tains no power of sale or disposition by the mortgagor.
It even says in terms that he shall not sell, or dispose of,
or remove it, and if he does so, or attempts to do so, the
mortgagee may take possession and foreclose. It covers
one thousand barrels of flour; but the mortgagor takes
one, or ten, and uses them in his family, with the acqui-
escence or affirmative permission of the mortgagee. It
covers a stock of goods. But the mortgagee sees the
mortgagor sell a few articles to customers, or take a
pound of tea for his own use, or cut off a shroud to bury
his child in, and makes no objection. Down to this
time his mortgage has been honest and valid, and un-
impeachable by creditors or others; but by this act of
silent acquiescence, or positive consent, he forfeits all
rights under it. His security is blown away with the
suddenness and effectiveness of a dynamite explosion.
Yet the position of plaintiff in error leads exactly to
that conclusion. It rejects every test of an intent to
defraud; all inquiry as to an agreement for a power of
disposal; all investigation as to whether any wrong is
being done to creditors, and makes the fact of any sale,
any disposal, any use of the mortgaged property by the
mortgagor, operate *per se* to nullify and invalidate a
security not either void, or voidable, at its inception.

*Freeman v. Rawson*, 5 Ohio St., 1.  *Collins v. Myers*, 16 Ohio, 547.  *Gardner v. McEwen*, 19 N. Y., 123. *Ford v. Williams*, 13 N. Y., 577.  *Russell v. Winne*, 37 N. Y., 591.  *Horton v. Williams*, 21 Minn., 187. Herman on Chattel Mortgages, 241.

MAXWELL, J.

On the eighteenth day of September, 1875, Lester W. Platt executed and delivered to the defendant in error a chattel mortgage on all his personal property to secure the payment on demand of the sum of $2,203.00.  The mortgage was filed for record on the day of its execution.  Platt died in a few days after the execution of the mortgage in question, leaving a will wherein Elvira G. Platt and the defendant in error were named as executors.  On or about the fourth day of January, 1876, the defendant in error took possession of the property described in the mortgage and advertised the same for sale as required by the statute.  On or about the nineteenth day of January, 1876, the treasurer of Platt county by his deputy levied upon certain mules and horses conveyed to defendant in said mortgage to satisfy taxes due and delinquent from Platt for the years 1873, 1874 and 1875. The property so seized was placed in the custody of the plaintiff in error, as bailee.  The defendant in error, Anderson, brought an action of replevin, and on the trial of the cause in the court below recovered a judgment for the possession of the property, to reverse which Hedman brings the cause into this court by a petition in error.

The mortgage contained the following provision: "That until default be made by the said mortgagor in the performance of the condition aforesaid it shall and may be lawful for him to retain possession of the said goods and chattels and to use and enjoy the same."  The property

mortgaged consisted of mules, horses, colts, ponies, oxen, cows, young cattle, sheep, swine, farming utensils, the crops on the farm, an undivided half of certain buffalo robes, household goods, and the stock of goods in the store. The stock of goods was worth from $300 to $500, a portion of which was Indian goods. One Keller was the clerk of the mortgagor at the time of the execution of the mortgage, and remained in the store and continued to sell goods as before the execution of the mortgage, until the defendant in error took possession of the same. There is no testimony showing the amount of sales, but no part of the proceeds were applied on the mortgage debt. The Indian goods were in the meantime exchanged for other goods which were more salable and which are still undisposed of. During the time mentioned, the defendant in error resided at Platt's late residence, and was occasionally in the store, and knew of the sales aforesaid, and made no objection. Other property included in the mortgage was used in Platt's family or sold to pay debts against the estate; but it appears that sufficient property remained at the time the defendant in error took possession to satisfy the mortgage. It also appears from the evidence that the defendant in error had loaned Platt about $2,000 in money on or about the first day of October, 1874, and that the mortgage in question was given to secure the payment of the same.

On the trial of the case the court instructed the jury that: "If from all the evidence you find that a contract was entered into by and between the said Lester W. Platt and Anderson, by which the said Platt was to, and did, reserve to himself the right to sell and dispose of the property included in such mortgage, such contract would render the mortgage inoperative and void as to creditors. It is not necessary that such contract be included in the mortgage or even in writing; proof that such contract was made in parol is sufficient."

" In considering the question of fraud you may take into consideration the fact that after the execution of the mortgage, the morgagor Platt by his agent continued to keep possession of the stock of goods in such mortgage mentioned, and continued to sell and dispose of the same with the knowledge and without objections on the part of said Anderson, not that such sale would of itself raise a conclusive presumption of fraud, but it is a circumstance for you to consider in determining the question of a prior contemporary agreement for the sale of such goods by the mortgagor Platt."

" The fact that the plaintiff being the mortgagee stood by and allowed the mortgagor to sell a part of the property mentioned in the mortgage would not of itself, unaccompanied by other facts, make the mortgage void. It would do no more than discharge the lien which he holds on the goods which he allowed to be sold, but if you find from the evidence that it was the agreement and intention of the parties that Platt should sell the goods in the store and appropriate the proceeds to his own use then you should find for the defendant " (plaintiff in error).

The last instruction and that preceding it were excepted to by the plaintiff in error, who requested a number of instructions to the effect that the mortgage was fraudulent and void as to creditors, which were refused by the court, to which the plaintiff excepted.

In *Tallon v. Ellison and Sons*, 3 Neb., 75, this court held that a mortgage of goods and chattels, with possession and *power of sale in the mortgagor*, was void as against the creditor of the mortgagor. In such a case the illegality of the transaction appears on the face of the instrument, and it is the duty of the court to pronounce it fraudulent as to creditors, *Monteith v. Bax*, 4 Neb., 171; it being presumed, where the mortgagor is permitted by the

terms of the instrument to dispose of the property in all respects as his own, that the transaction was not entered into in good faith as *security* for the payment of a debt, but as a mode of covering up property in order to hinder, delay, or defraud creditors. But to render a conveyance of property, not fraudulent on its face, void as to creditors, the fraudulent purpose must be shared by both the grantor and grantee. If a mortgage is made to secure a *bona fide* debt, and the mortgagee has no notice of a fraudulent intent on the part of the mortgagor, such mortgage will be held to be valid. And when a mortgage contains no unlawful provisions, it can only be declared void by proof of fraud in fact, which under our statutes is a question for a jury to find.

The question of fraudulent intent is generally determined from the existence of other facts which tend to show it. In but few instances can it be shown by direct testimony, and must therefore be established by circumstantial evidence; but the questions as to the existence of facts showing a fraudulent intent are alone for the jury to determine, and not for the court. If, however, certain facts are *conceded* to exist, the question of their sufficiency to indicate a fraudulent intent becomes a question of law, which the court must determine. But the question of the credibility of witnesses rests entirely with the jury. In the case at bar, the testimony of the witnesses is not embodied in the record. We are merely told what the parties *proved.*

The so-called proof is very vague and indefinite. We are told that the store was kept open " until about forty days after Platt's death. The amount of sales does not appear, but no part of the proceeds of said sales was applied to the satisfaction of said mortgage." As to the groceries, we are told that a part were sold, a part were used in Platt's family, and the rest remained undisposed of. When we remember that it is shown that

the entire stock was only of the value of from $300 to $500, it is apparent that the sales were inconsiderable, and they may have been of the most trifling character and be consistent with the so-called proof in the record.

The mortgage not being fraudulent on its face, the question of fraudulent intent was properly submitted to the jury, who found in favor of the defendant in error. It is well settled in this court, that the verdict of a jury will not be set aside unless clearly against the weight of evidence; but a mere difference of opinion between the court and jury will not authorize the court to set aside a verdict. *Seymour v. Street*, 5 Neb., 79. *Blackburn v. Ostrander*, 5 Neb., 219.

As it does not affirmatively appear that the verdict is erroneous the judgment must be affirmed.

JUDGMENT AFFIRMED.