## PALMER *v.* HANNA, Administrator, *et al.*

(*Supreme Court of Colorado, December Term, 1881—Error to the County Court of Arapahoe County.*)

1.  EVIDENCE—HUSBAND AND WIFE—INTEREST. Secs. 1, 2 and 5, Chap. CIV of the General Laws, entitled "Witnesses," must be construed as a whole. Sec. 1 removes disqualification on the ground of interest; Sec. 2 contains exceptions thereto; Sec. 5 relates to husband and wife, and provides that they shall not testify for or against each other, except, *inter alia*, when the litigation shall concern the separate property of the wife, in which case the husband and wife may testify for and against each other in the same manner as other parties may under this act.

2.  SAME—SUIT BY SURVIVING WIFE AGAINST REPRESENTATIVE OF DECEASED HUSBAND. In case of a suit by the surviving wife against the administrator of her deceased husband, though concerning her separate property, the widow is not, by the 5th section, made a competent witness in her own behalf, for the reason, that by that section she is only authorized to testify "in the same manner as other parties," and therefore, falls within the provisions of section two, which excludes the testimony of the living as against the legal representative of the dead.

3.  SEPARATE PROPERTY. A deed for real estate to the wife invests her with the right to the premises as her sole and separate property. The fact that it was purchased with the money of the husband does not affect this result—the transaction being legitimate, and its *bona fides* not questioned by creditors. The husband, in the eyes of the law, in such case is a stranger to the estate, and remains such during the wife's ownership.

4.  SAME—PROCEEDS OF SALE OF—COMMON LAW AND STATUTORY RIGHTS OF THE WIFE. The rights of the wife, under this statute, are essentially different from what they were under the common law. And cases arising under this statute must be considered with reference thereto. Under the common law the husband had the absolute right to all the wife's personal property and *choses in action* reduced to possession; while under this statute the wife holds an absolute legal estate as free from the common law rights of her husband as if she were unmarried. The proceeds of the sale of her separate estate, though received by the husband, and deposited in bank in his own name, belong to her; and a gift to the husband will not be implied by the fact that he so receives and deposits such proceeds.

BECK, J. The first question presented for our consideration by this record arises upon the refusal of the Court below to permit the plaintiff, Margaret Palmer, to be sworn as a witness in her own behalf, and to prove her demand by her own testimony.

Plaintiff is the widow of Frank Palmer, deceased, and her claim against his estate is for moneys received by him and deposited to his private bank account, which arose from a sale of a house and lots in the city of Denver; also household and other personal property belonging to his wife, the plaintiff.

The question is controlled by Secs. 1, 2 and 5, Ch. CIV, Gen. Laws, entitled "Witnesses."

Section 1 removes the disqualification of witnesses, on the ground of interest, or the conviction of crime, except as afterwards stated.

Sec. 2 contains several exceptions to the rule announced in the first section, one of which is, that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as    *    *    *    the executor or administrator, heir, legatee or devisee, of any deceased person    *    *    *    unless when called as a witness by such adverse party so suing or defending."

Sec. 5 is as follows: "That no husband or wife shall, by virtue of Sec. 1 of this act, be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage, whether called as a witness during the existence of the marriage or after its dissolution, except in cases where the wife would, if unmarried, be plaintiff or defendant, or where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the neglect of the husband to furnish the wife with a suitable support; and except, also, in cases where the litigation shall be concerning the separate property of the wife, in all of which cases the husband and wife may testify for or against each other in the same manner as other parties may under the provisions of this act."

Counsel for plaintiff in error insist, that inasmuch as the litigation concerns the separate property of the wife, now widow, of the deceased, she was a competent witness in her own behalf under the fifth section.

To warrant this construction, the position is assumed that the fifth section must be construed by itself, and without reference to the first and second sections.

This position is clearly untenable. An examination of the whole act shows an intention on part of its framers that the several sections should be construed together.

So far as the marriage relation is concerned, two obstacles existed at common law to prevent husband and wife from testifying for each other. One was that of interest in the event of the suit; the other was the marriage relation itself.

The first obstacle would be wholly removed in such case by the *first* section of the statute, but for the exceptions contained in the *fifth* section. The latter section confined such testimony to certain specified cases, among which is, " where the litigation shall be concerning the separate property of the wife."

But this section goes further, and provides affirmatively, that in this and other cases therein specified, " *the husband and wife may testify for or against each other in the same manner as other parties may under the provisions of this act*," the effect of which provision is to wholly remove the disqualification of the marriage relation, so far as concerns the cases last referred to. In respect to these cases, husband and wife testify as unmarried persons.

It is to be observed, however, that they are accorded no more privilege than the unmarried, and are made subject to the same disabilities—that is to say, they may testify for or against each other, " *in the same manner as other parties may under the provisions of this act.*"

When, therefore, husband or wife dies, the survivor becomes subject to the provisions of section *two* of the act, which excludes the testimony of the living as against the legal representatives of the deceased.

The ruling of the County Court upon the admissibility of the testimony proposed was correct. The widow was plaintiff; the administrator of her deceased husband was defendant. She proposed to testify of her own motion that certain property sold in the lifetime of her husband belonged to her, and that she consented to the sale, and permitted her late husband to take the money, upon an understanding between them that he was to reinvest it in another homestead, which was to belong to her, but which was never done.

Such testimony is specifically prohibited by the *second* section when offered by a party to a civil action under these circumstances.

These sections of our statutes were copied from the statutes of Illinois, where they bear the same numbers as designated in our own, and where they have received, with a single exception, perhaps, the same construction which we have given them.

In the case of *Pyle et al.* v. *Oustatt et al.*, 92 Ill., 210, it was contended that Naomi Pyle, wife of the appellant, was entitled to testify under the *fifth* section, although the appellees, Henry and Hiram Pyle, who were the real parties in interest, were defending as heirs-at-law of Andrew Pyle, deceased. The Court say: "We see nothing in this section looking to the view contended for by appellants. There is, indeed, nothing in the fifth section that will, in any case, have the effect of rendering one competent as a witness, who is incompetent under the first and second sections. Where one is suing or defending as heir, devisee, etc., no adverse party, or party having an interest in the event of the suit can, on his or her own motion, testify, and it is wholly immaterial whether such adverse party is married or single—the rule applies to all persons alike."

The same question presented by this record was passed upon in the case of *Connelly et al.* v. *Dunn et al.*, 73 Ill., 218. The heirs-at-law of Charles Dunn filed a bill against his widow for the partition of certain lands of which Dunn died seized. The widow filed a cross-bill, setting up that the premises were purchased with her money, with the express agreement on part of her late husband that the title should be taken in her name, and asking the Court to declare a resulting trust in her favor in the whole premises.

It was insisted that, as the litigation was concerning the separate property of the widow, she was entitled to testify under the fifth section of the statute. But the Supreme Court held that a proper construction of the whole act rendered her testimony clearly incompetent. That the ground of the objection was not the marital relation, but the death of the husband, by reason of which his testimony could not be had to meet that offered by his widow against his legal representatives. That clause of the fifth section which permits husbands and wives to testify for and against each other, "in the same manner as other parties may, under the

provisions of this act," was construed to subject husband and wife to the same conditions in testifying as other parties.

Counsel for appellant say the last cited case is in conflict with all the decisions of the same Court, both prior and subsequent. An examination of the cases referred to shows the statement to be unfounded. One of their propositions is as follows: "Again, the bill in the case of *Connelly* v. *Dunn* was filed by heirs to par-tition the real estate of the decedent against the widow. In this respect the case is like the cases of *Pigg* v. *Carroll*, 89 Ill., 207, and *Galbraith* v. *McLain*, 84 Ill., 379, in both of which cases the widow was held a competent witness, while she is excluded in *Connelly* v. *Dunn*, 73 Ill., *supra*."

In *Pigg* v. *Carroll*, 89 Ill., 207, there was no widow in the case. It was a bill for partition between heirs. The property belonged to the litigants, and the Court held that it was immaterial how their title was acquired, so far as that action was con-cerned, whether by purchase or descent, and that there was no more reason to say that the parties were suing or de-fending as heirs, than if the property had been acquired other-wise than by inheritance. No objection was interposed to the testimony of the married women, who were parties to the cause, for being heirs, the litigation concerned their separate property, and it seems to have been conceded that they were en-titled to testify under the statute. The objection was to the right of their husbands to testify. The Court, however, very properly held that in a litigation concerning the separate property of married women, wherein they were competent witnesses, their husbands were also competent witnesses on their behalf.

In the other case, *Galbraith* v. *McLain*, 84 Ill., 379, there was a widow, but she was neither a party to the suit, nor interested in the result thereof. It was a contest between the heirs of the same decedent, to enforce the specific performance of a contract, alleged to have been made by the deceased in his lifetime, for the partition of the lands of which he died seized. The widow had since remarried, but neither herself nor her then present husband being parties, or interested in the controversy, neither was interested for or against the other.

It is unnecessary to review the other cases cited by counsel, in support of the proposition, that the ruling of the Illinois Supreme Court is favorable to the admission of the testimony

of a widow, when she is party to an action, against the representatives of her deceased husband. With the single exception of *Primmer* v. *Clabough*, 78 Ill., 94, we find nothing in the reported decisions of that Court which will bear such a construction.

But the main inquiry is, whether the County Court erred in rejecting the claim filed by plaintiff in error against the estate of her deceased husband.

As before stated, this claim was for moneys received by her husband from the sale of her separate property, real and personal, amounting to the sum of eight thousand dollars. The claim, as filed, also includes a charge for interest amounting to the sum of five thousand and twenty-five dollars.

It was conceded upon the trial that, at the time of the conveyance of the real estate in question to the wife, the husband furnished the purchase money which was paid therefor.

And while it appears to be admitted, on the part of the defense, that the force and effect of the deed to the wife was to invest her with the title to the premises as her sole and separate property under the statute, yet the fact that the property was purchased with the husband's money is frequently referred to in the argument as an important element in the defense.

There was no testimony showing a gift by the plaintiff in error to her husband of the money received upon the sale of the property, but the ground of the defense is, that the acts, conversation and conduct of both husband and wife raise a legal implication of such gift, and that this implication is strengthened by the fact that the husband's money paid for the property at the time of its acquisition by the plaintiff in error.

In view of the laws of this State defining the rights of married women, as interpreted by the decisions of this Court in *Wells* v. *Caywood*, 3 Colo., 487, and *Coon et al.* v. *Rigden*, 4 Colo., 275, it would seem that this fact can have but little, if any, bearing in the case. The wife was invested with title by the deeds of Berry and Sayre. The transaction being a legitimate one, there being no creditors to question its *bona fides*, so far as appears, the fact that the purchase money came from the husband, was wholly immaterial. Upon delivery of the deeds to the wife it became as much her separate property as if purchased with money owned by her before her marriage. (*Haines* v. *Haines*, 54 Ills, 75; *Wing*

v. *Goodman*, 75 Ills., 159.) The husband, in the eye of the law, was a stranger to the estate, and remained such during the wife's ownership. He could neither alien nor control it without his wife's consent, and then only as her agent or attorney in fact. An examination of the testimony shows that the contract of both parties, in respect to the property, was in strict harmony with their legal relations thereto.

Can the rights of the wife be divested by consenting to the sale of her property and permitting her husband to receive the purchase money and deposit the same to his private bank account?

Upon a review of the testimony, we are of opinion that it does not show affirmatively that the husband ever used this money or claimed to hold it as his own. His usual declarations were, that it belonged to his wife.

It is held in *Haines* v. *Haines, supra*, that, upon sale of real estate vested in the wife, the purchase money will also be regarded as her separate property, although placed in the husband's hands for a special purpose—as, to build a house.

Counsel for defendant in error lay down two propositions in the discussion of this branch of the case. They say, that since the wife could not be deprived of her own property in a court of equity, prior to the statute concerning the rights of married women, the question to be determined here can be treated very much the same with or without the statute.

The other is, that inasmuch as before the statute the wife was held capable of making valid gifts of her property to her husband, and that such gifts were *implied* from her acts and course of dealing with him, now that she is no longer under his dominion and control, and has absolute control of her property, gifts to the husband will be more readily implied than before.

It is possible that counsel would prefer to have this branch of the case considered and decided as if no statutes had been enacted concerning the property rights of married women. But as the legal status of the wife at common law was essentially different from what it is now, and since the question here involved arises under the statute, it must be considered with reference to the statute.

An important distinction between the equitable rights of the wife in respect to her separate estate under the common law, and

her statutory rights under a statute similar to our own, was pointed out by the Court. In *Patten* v. *Patten*, 75 Ill., 446, which was, that, under the former law, the husband's marital rights co-existed; he had the absolute right to all her personal property in possession; to her *choses in action* reduced to possession during his life; and to the rents, issues and profits of her real estate. A controversy could not arise between husband and wife in a court of equity, in respect to the separate estate of the wife, without involving more or less conflict between the legal rights of the husband and the equitable rights of the wife, also between the principles of equity and those of the common law pertaining to the marriage relation. But, under the statute, the wife holds an absolute legal estate, as free from the common law rights of her husband as if she were unmarried; as to her separate estate she has no husband.

We understand counsel to assume the position, that, to entitle the plaintiff to recover in this case, she must produce clear and unquestionable proof that her deceased husband held her money in trust for her, or had the use of it for a specific purpose.

Such rule may obtain in Courts acting under the principles of the common law which failed to recognize the individuality of the wife, but it is not in accord either with the letter or spirit of our statute. It is inconsistent with the rights of persons who are strangers, in law, to each other's estates.

We are cited, as authority for such rule, to the case of *Monteith* v. *Bax*, 4 Neb., 170; that was a contest between the wife and creditors of the husband, under circumstances strongly indicating complicity between husband and wife to defraud the creditors of the former.

The rule is taken from Nolan's Appeal, 23 Penn. St., 38, and while endorsed by the Supreme Court of Nebraska, that Court remarked, that their statute relating to the rights of married women took effect subsequently to the alleged fraudulent transfer of property to the wife.

The case of *Kahn* v. *Wood*, 82 Ill., 219, is also strongly relied upon in support of the position. That was likewise a contest between the wife and creditors of her husband in respect to property seized and sold on attachment against the latter. The wife claimed the property, part of it as having been received from her father at time of her marriage, the balance as having

been purchased with her money. Having brought suit for damages against the creditors, the Court held that the burden of proof was on her to prove that the property seized and sold was her property. In respect to that claimed to have been received from her father's estate, she failed to prove that it was received after the passage of the act of 1861 vesting such property in married women. The Court said, if it was received before the act, it belonged to the husband, upon his reducing it to possession.

In respect to the *money*, she testified that it was paid to her husband by her consent, and that he had full control of it by her consent, to do what he pleased with it. The Court held that, there being no agency in that transaction, the money became the husband's.

It would seem to have been sufficient to have held, under the facts, that the property purchased by the husband with the wife's money, was liable to the debts of the husband; leaving the question of the husband's liability to the wife, for the use of the money, to be settled in another action. Further testimony may have shown it to have been a loan instead of a gift.

It is held in *Patten* v. *Patten, supra,* that the receipt by the husband of proceeds and income due the wife, and income from her estate, is presumptively in the character of agent, and that, if he claim the same as a gift or legal transfer, the burden is on him to establish his claim by evidence, and that in no other mode of treating this subject can the intent and purpose of the statute be carried out.

We think the latter rule in harmony with the spirit of our statute and the decisions of this Court.

Applying that rule of construction to the facts of this case, in our judgment the plaintiff was entitled to recover.

We have, first, the fundamental fact that the money arising from the sale of plaintiff's property was her own money; secondly, that, although the deceased received and deposited it to his private bank account, he never claimed it as his money, but, on the contrary, always disclaimed to own it, saying he was going to purchase his wife another home with it.

Here is no contest with creditors of the husband; no contest even between husband and wife. The wife's rights were fully conceded by the husband until his lips were sealed by death.

We are, therefore, of opinion that upon the testimony the claim for the principal sum, eight thousand dollars, should have been allowed.

There being no evidence that the deceased used the money in any way, the claim for interest was properly rejected.

Judgment reversed and cause remanded, with directions to the Court below to enter judgment in accordance with the views herein expressed.

*Judgment reversed.*

*J. Q. Charles*, for plaintiff in error.

*Benedict & Phelps*, for defendant in error.